## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

No. 5:11-CV-693-FL

| | |
|---|---|
| CLAUDIA D. ELLIOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| | ) |
| LARRY ROLLINS, Sheriff of Harnett | ) |
| County, and CINCINNATI INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on Defendants' motion for summary judgment. [DE-21].

Plaintiff brought this action asserting federal claims pursuant to the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, *et seq.*, as well as state law claims. Defendants move for summary

judgment on Plaintiff's claims. Plaintiff has responded to Defendants' motion [DE-27] and

Defendants have replied [DE-30]. Accordingly, the matter is ripe for disposition. The parties have

not consented to jurisdiction of the magistrate judge; therefore, the motion is considered here as a

recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule

72.3(c). Having considered the arguments of the parties, and carefully reviewed the materials

tendered in the case, it is recommended that Defendants' motion for summary judgment be granted

in part and denied in part for the reasons that follow.

## I. BACKGROUND

Plaintiff Claudia Elliott ("Plaintiff"), who is a resident of North Carolina, began working as

an employee for the Harnett County Sheriff's Office in January 2008. Dep. of Claudia Elliott[1] ("Pl.'s Dep.") 14:4-6. During the relevant time period of Plaintiff's employment, Plaintiff worked as a detention officer. Pl.'s Dep. 14:8-9. While employed with the Harnett County Sheriff's Office, Plaintiff's supervisor was Captain Bill Grady ("Grady"), the administrator at the Harnett County Jail. Pl.'s Dep. 15:10-18. Plaintiff served in the position of detention officer until Sheriff Larry Rollins ("Defendant Rollins") terminated her employment on November 1, 2010. Pl.'s Dep. 14:5-7; Dep. of William Grady[2] ("Grady Dep.") Ex. 18.

As a detention officer, Plaintiff worked primarily in the female inmate pods making rounds, but performed other jobs throughout the jail such as booking, fingerprinting, and visitation as needed. Pl.'s Dep. 17:15-17, 34:20- 35:9; Second Dep. of Claudia Elliott[3] ("Pl.'s 2d Dep.") 7:23-8:5. Plaintiff worked rotating 12-hour shifts, both during the day and at night, and was in direct contact with the female inmates. Pl.'s Dep. 18:21-23, 37:8-17. Plaintiff worked on Sergeant Curtis Thompson's ("Thompson") squad from January 2008 until April 2010 when Plaintiff was transferred to Officer Jean Kidd's squad. Pl.'s Dep. 23:4-8, 26:13-15. Defendant Rollins had the sole power to appoint and terminate Plaintiff as a detention officer. Pl.'s Dep. 118; *see* N.C. Gen. Stat. § 153A-103.

_____

[1] Plaintiff was first deposed on November 7, 2012. Defendants filed the complete transcript of Plaintiff's November 7, 2012 deposition, in support of their brief, which can be found at Docket Entry Numbers 22-2, 22-3, 22-4, and 22-5. Plaintiff did not re-file the November 7, 2012 deposition in support of her response, but refers to Plaintiff's deposition as filed by Defendants at the above-listed Docket Entries.

[2] Various excerpts from Grady's deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 22-7 and 27-4.

[3] Plaintiff was deposed a second time on December 21, 2012. Defendants filed the complete transcript of Plaintiff's December 21, 2012 deposition, in support of their brief, which can be found at Docket Entry Number 22-6. Plaintiff did not re-file the December 21, 2012 deposition in support of her response, but refers to Plaintiff's deposition as filed by Defendants at the above-listed Docket Entry.

2

In August 2010, Plaintiff experienced abdominal pain and fatigue and was informed by her physician, Dr. Michael Jones, on September 15, 2010, that she was pregnant. Pl.'s Dep. 37:1-4; Pl.'s 2d Dep. 32:1-5. Plaintiff had been working in the inmate pods leading up to the time she learned she was pregnant. Pl.'s Dep. 49:16-25. Plaintiff's physician advised her that, for safety purposes, she should work in another location in the jail outside of direct contact with inmates. Pl.'s Dep. 37:15-17. Plaintiff's physician wrote a note stating the same – that Plaintiff needed light duty work outside of direct contact with inmates. Aff. of Claudia Elliott ("Pl.'s Aff.") [DE-29-1] Ex. B. Plaintiff presented the note to her supervisors at the jail on or around September 15, 2010.[4] Pl.'s Dep. 37:18-25, 45:17-22; Pl.'s 2d Dep. 8:23-9:1; Pl.'s Aff. Ex. B. After presenting her physician's note to her supervisor in the Sheriff's Office, Plaintiff was informed by Lieutenant Byrd ("Byrd") that there were no light duty positions in which Plaintiff could be placed. Pl.'s Dep. 37:23-38:21. Light duty positions had been suspended and were unavailable to Sheriff's Office employees effective June 22, 2010. Defs.' Summ. J. Br. [DE-22] Ex. 9. Plaintiff was further told by Byrd, after Byrd spoke with the budget office, that she would have to take family medical leave due to the fact that there was no light duty work available. Pl.'s Dep. 38:8-12, 46:19-21, 47:10-21, 48:15-22; Pl.'s 2d Dep. 57:16-21.

Plaintiff was instructed by Byrd to contact Marie Hairr ("Hairr"), the Sheriff's Office Budget and Finance Officer, to coordinate her family medical leave. Pl.'s Dep. 38:5-8, 51:10-14. Hairr is the department contact for Sheriff's Office employees who forwards employee paperwork to Human

---

[4] Plaintiff initially presented the note to her squad sergeant, Jean Kidd ("Kidd"). Pl.'s Dep. 45:14-22. Kidd then passed the note to Lieutenant Byrd ("Byrd"), the supervising lieutenant at the jail. Pl.'s Dep. 45-46. The note did not specify a duration of Plaintiff's need for light duty work. Pl.'s Aff. Ex. B.

3

Resources. Dep. of Melinda Bethune[5] ("Bethune Dep.") 9:2-9; Dep. of Marie Hairr[6] ("Hairr Dep.") 20:17-22. Hairr provided Plaintiff with instructions on obtaining the family medical leave application and instructed her on the appropriate leave procedures, including having a physician complete the necessary certification ("Health Care Provider Certification"). Pl.'s Dep. 51:19-25, 52:2-8; Hairr Dep. 18-19. On September 20, 2010, Plaintiff began the process to apply for FMLA leave by completing the one-page "Harnett County Application for Leave under FMLA" form ("Application") and returning the Application to Hairr. Grady Dep. Ex. 16; Hairr Dep. 9:6-17. In the Application, Plaintiff stated the reason for her FMLA leave request was that she was pregnant and had been placed on light duty restrictions by her OB/GYN physician. Grady Dep. Ex. 16. The Application advised Plaintiff that she must provide a Health Care Provider Certification completed by her physician. *Id.* Plaintiff initialed her acknowledgment on the Application. *Id.*

Plaintiff stopped working in late September 2010. Pl.'s Dep. 65:17-22, 66:1-3, 70:3-12. At that time, Hairr began keying Plaintiff's time entries in as "FMLA" as if Plaintiff had already been approved for leave. Hairr Dep. 20:15-22. Hairr maintains that it is routine for her to begin keying an employee's time as FMLA once she has received their Application, regardless of whether the employee has been approved for FMLA leave by Human Resources. Hairr Dep. 20:17-22; Bethune Dep. 31. Upon receiving Plaintiff's Application, Hairr forwarded the Application to Human Resources. Hairr Dep. 10:10-13.

Melinda Bethune ("Bethune"), an employee in the Harnett County Human Resources Office

---

[5] Various excerpts from Bethune's deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 22-12 and 27-3.

[6] Various excerpts from Hairr's deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 22-11 and 28-2.

4

who manages FMLA cases and approves FMLA leave, states that a Health Care Provider Certification was mailed to Plaintiff along with her notice of eligibility, but was returned as undelivered on or around October 16, 2010. Bethune Dep. 8:3-6, 10:3-5, 17:4-10. While it is the practice of the Human Resources office to mail Heath Care Provider Certifications to the employee, Bethune states that mailing the form is often duplicative because the employee has likely obtained the Health Care Provider Certification through other methods. Bethune Dep. 26:20-24. Bethune maintains that in order for FMLA leave to be approved, an employee must submit a completed Health Care Provider Certification.[7] Bethune Dep. 25:23-25.

On or around September 20, 2010, Plaintiff obtained a copy of the Health Care Provider Certification and provided it to her physician.[8] Pl.'s Dep. 51:21-25, 52:6-8, 54:19-25; Pl.'s Aff. ¶ 10. According to Plaintiff, Plaintiff contacted Hairr in early October and Hairr confirmed to Plaintiff that she had received the completed Health Care Provider Certification. Pl.'s Dep. 52:16-21, 54-55; Pl.'s Aff. ¶ 13. Hairr maintains that she did not receive the Health Care Provider Certification and that she never told Plaintiff that it had been received. Hairr Dep. 19:2-5, 8-21. Bethune maintains she never received a Health Care Provider Certification either. Bethune Dep. 18:8-11, 32:7-8. The record includes a completed Health Care Provider Certification purportedly signed by a physician

---

[7] Bethune states that Trinity Faucett, the HR director at the time, would review all FMLA approvals and "sign off" on them. Bethune Dep. 10:6-11.

[8] It is not clear from the record where or how Plaintiff obtained the Health Care Provider Certification because Plaintiff does not state directly where she obtained this document. Plaintiff summarily states that she "got the paperwork" that Hairr instructed her on obtaining and acknowledged that Hairr told her she needed to have her "doctor fill it out." Pl.'s Dep. 51:18-52:10. Moreover, Hairr does not clarify how Plaintiff obtained the Health Care Provider Certification. Hairr Dep. 41-45. Bethune stated that the Health Care Provider Certification is available on the county's website. Bethune Dep. 25:6-10.

5

and dated September 30, 2010.[9] Pl.'s Aff. Ex. B. The Health Care Provider Certification specifies Plaintiff will be unable to perform her job functions commencing September 22, 2010 due to a miscarriage.[10] *Id.* The form further indicates that Plaintiff's condition will last about one week and the physician responded "no" when asked whether Plaintiff's medical condition is pregnancy. *Id.* The first page of the Health Care Provider Certification includes the written notation "Mailed to Pt 10/4/10" in the bottom corner. *Id.*

In October 2010, while out of work, Plaintiff learned that she had a miscarriage and underwent surgery on October 15, 2010. Pl.'s Dep. 57:22-24, 58:2-7, 66:23-24, 72:24; Pl.'s 2d Dep. 13:5-9, 22:16-24. Plaintiff had a follow-up appointment with her physician two weeks after the surgery on November 1, 2010. Pl.'s Dep. 58:7-9; Pl.'s 2d Dep. 13:14-16. At her follow-up appointment, Plaintiff's physician informed her that she could return to work on November 8, 2010 and perform her full work duties. Pl.'s 2d Dep. 14:1-2. Plaintiff met with Grady at the jail on November 1, 2010 to inform him of her return-to-work date. Pl.'s Dep. 58-59. During the meeting, Grady provided Plaintiff a letter, signed by Defendant Rollins, terminating her employment effective November 1, 2010.[11] Pl.'s Dep. 59:1-3; Grady Dep. Ex. 18. Plaintiff's termination letter did not

---

[9] Plaintiff maintains that she communicated with the Sheriff's Office while she was out of work to keep them informed about her pregnancy and continued leave period, primarily speaking with Byrd. Pl.'s Dep. 77, 216; Pl.'s 2d Dep. 61; Pl.'s Aff. ¶¶ 15-16, 18.

[10] Plaintiff states in her deposition that the Health Care Provider Certification stating Plaintiff had suffered a miscarriage was dated prior to Plaintiff being aware of her miscarriage. Plaintiff maintains she was not aware of a miscarriage until the week of her surgery on October 15, 2010. Pl.'s Dep. 71-72.

Also, Plaintiff lists her essential job functions as follows: "Detain Inmates in Detention Center, Search Inmates and Cell Searches, Make Rounds in POD with Inmates. Direct Supervision." Pl.'s Aff. Ex. B.

[11] Bethune never issued a denial or approval of FMLA leave to Plaintiff prior to her termination on November 1, 2010. Bethune Dep. 30:15-20, 31:1-11.

provide a reason for her termination and Grady did not provide Plaintiff with a specific reason for her termination except to say Defendant Rollins "don't have a reason." Pl.'s Dep. 59:5-8. Following her termination, Plaintiff attempted to make an appointment with Defendant Rollins to discuss the reason for her termination. Pl.'s Dep. 59-61. Plaintiff was unable to schedule an appointment through Defendant Rollins' secretary, yet Plaintiff was informed that her messages requesting an appointment had been given to Defendant Rollins. *Id.* A document entitled "Revocation of Appointment" was signed by Defendant Rollins and filed with the Harnett County Clerk of Court on January 20, 2011, indicating Plaintiff resigned from her position as detention officer.[12] Grady Dep. Ex. 18.

Plaintiff states that during her employment with the Harnett County Sheriff's Office, she was not counseled for unsatisfactory performance of her duties. Pl.'s Dep. 34:9-20. However, in April 2010, Plaintiff was verbally counseled by Grady and transferred to a different squad due to inappropriate text communications between Plaintiff and Thompson via their cell phones. Pl.'s Dep. 20:12-21, 23:15-25; Grady Dep. 11:1-2. Specifically, Plaintiff sent pictures of her breasts to Thompson and Thompson sent pictures of his chest to Plaintiff. Pl.'s Dep. 21-22, 29:3-5; Grady Dep. 11:4-14, 21-23. Defendant Rollins was notified of Plaintiff's texting communications and was made aware that Plaintiff was counseled by Grady. Dep. of Larry Rollins[13] ("Rollins Dep.") 16:2-12.

Plaintiff also admits to having received a returned check for insufficient funds in regards to

---

[12] Hairr stated that the revocation of appointment document is a routine document filed with the Clerk of Court when a detention officer is terminated. Hairr Dep. 24:24-25:11.

[13] Various excerpts from Rollins' deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 22-9 and 28-1.

her rent payment for which an arrest warrant was ultimately issued. Pl.'s Dep. 91:6-10, 94:23-25, 151:3-20. In 2010, Plaintiff was a tenant at Bradford Place Apartments ("Bradford Place") in Fuquay-Varina, North Carolina, located in Wake County. Pl.'s Dep. 92; Aff. of Anita Holt ("Holt Aff.") [DE-22-8] ¶¶ 2-3. The property manager at Bradford Place was Anita Holt ("Holt"). Holt Aff. ¶ 2. In June 2010, Bradford Place received a rent check from Plaintiff in the amount of $675.00 that was subsequently returned due to insufficient funds. Holt Aff. ¶ 4. Plaintiff moved out of her apartment on or around August 27, 2010, and was aware that she owed money for the full amount of the returned check and various late fees. Pl.'s Dep. 93-95, 100. On or around September 29, 2010, Holt contacted the Sheriff's Office after she was unable to contact Plaintiff to resolve the payment issues. Holt Aff. ¶ 11. Major Huber ("Huber") at the Sheriff's Office spoke with Holt shortly thereafter and was informed that Plaintiff had moved out of Bradford Place without making arrangements to pay outstanding debts.[14] *Id.*; Dep. of Jeffrey Huber[15] ("Huber Dep.") 28. Huber informed Defendant Rollins about Plaintiff's bad check after speaking with Holt. Huber Dep. 31:14-16, 39:13-16; Rollins Dep. 20:16-20. Holt subsequently informed Huber, prior to Plaintiff's termination, that she was seeking an arrest warrant for Plaintiff's bad check and Huber notified Defendant Rollins.[16] Holt Aff. ¶ 14; Huber Dep. 39:13-16; Rollins Dep. 27-29. The Wake County Sheriff's Office subsequently issued an arrest warrant for Plaintiff in December 2010, after

---

[14] Defendant Rollins states that a message was left on his desk by his secretary that Plaintiff's landlord, Holt, had called his office. Defendant Rollins states that he read the note and directed Huber to "handle" the matter. Rollins Dep. 20:6-20.

[15] Various excerpts from Huber's deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 22-10 and 28-3.

[16] Defendant Rollins states that he made the decision to terminate Plaintiff's employment two or three weeks prior to November 1, 2010, and that when he made that decision, he had been informed by Huber that Holt was pursuing an arrest warrant on Plaintiff's bad check. Rollins Dep. 27:19-28:9.

8

Plaintiff's termination, for passing a bad check on her rent. Pl.'s Dep. 193:2-9 & Ex. 5. The warrant was served on Plaintiff in January 2011. Pl.'s Dep. 191. Plaintiff maintains that she and Holt had agreed in September 2010 for her security deposit to be applied to the insufficient funds check to cover the outstanding rent and was not aware that the bad check had not been resolved until the warrant was served on her in January 2011. Pl.'s Dep. 95-97.

On December 3, 2011, Plaintiff filed the present action against Defendant Rollins in his official capacity as the Sheriff of Harnett County and against Cincinnati Insurance Company, Defendant Rollins' surety. Compl. [DE-1]. The complaint alleges federal claims under the FMLA, a North Carolina common law claim for negligent infliction of emotional distress, and a statutory surety bond claim. Defendants filed an answer on February 3, 2012 generally denying all allegations and raising several affirmative defenses. Answer [DE-8].

## II. STANDARD OF REVIEW

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials demonstrate "that there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322. When the moving party has carried its burden under Rule 56, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). In determining whether a genuine issue of material

9

fact exists, the court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 248. Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. The court does not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Id.* at 255 (noting that "credibility determinations" and "the weighing of the evidence" are functions of a jury).

## IV. ANALYSIS

### A. FMLA claims

Pursuant to the FMLA, an eligible employee is entitled up to twelve weeks of leave during a twelve month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of [her] position," among other qualifying reasons.[17] 29 U.S.C. § 2612(a)(1)(D); *Miller v. AT&T Corp.*, 250 F.3d 820, 825 (4th Cir. 2001). Upon return from FMLA leave, an employee has the right to be restored to the same or equivalent position as the one they held when their leave commenced. 29 U.S.C. § 2614(a)(1). The FMLA creates a private right of action for equitable relief or money damages against any employer that denies its employee their FMLA rights. *Id.* §§ 2615(a), 2617(a). Sections 2615(a)(1) and (2) prohibit an employer from interfering with substantive entitlements provided by the FMLA and from discriminating against an

---

[17] The FMLA authorizes employees to take leave under four circumstances. 29 U.S.C. § 2612(a)(1)(A)-(D). The fourth circumstance, as mentioned above, is when "a serious health condition . . . makes the employee unable to perform the functions of [her] position" and this appears to be the applicable circumstance based on Plaintiff's allegations. *Id.* § 2612(a)(1)(D) ("self-care provision").

10

employee for exercising or attempting to exercise such rights. As the Eleventh Circuit explained in *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001), the

> FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, see 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act, see 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) . . . .

*Id.*

Interference claims are not about discrimination, but simply whether the employer provided the employee with his or her rights under the FMLA, which includes restoration to the same or an equivalent position. *See Atchison v. Sears*, 666 F. Supp. 2d 477, 488-89 (E.D. Pa. 2009); *see also* 29 C.F.R. § 825.214 (stating the employee's right to reinstatement). "[A]ny violation of the FMLA – or of the regulations implementing it – constitutes such unlawful interference." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004). Under the FMLA's other prohibition, an employer may not use an employee's "taking of FMLA leave as a negative factor in employment actions" regarding that employee. 29 C.F.R. § 825.220(c).

Plaintiff alleges that Defendant Rollins unlawfully interfered with her rights under the FMLA ("interference claim") and unlawfully retaliated against her for taking FMLA leave ("retaliation claim") by terminating her employment with the Harnett County Sheriff's Office. Compl. ¶¶ 51, 63. Defendants contend that they are entitled to summary judgment on Plaintiff's FMLA claims because Plaintiff has failed to show she had a serious health condition, Defendant Rollins terminated Plaintiff for legitimate reasons, and Plaintiff cannot demonstrate that the proffered

11

reason for her termination was pretextual. Defs.' Summ. J. Br. at 9-17.

    *i.    Serious Health Condition*

    Plaintiff has brought FMLA claims for both interference and retaliation. Defendants argue that summary judgment is appropriate on both the interference and retaliation claims because Plaintiff's pregnancy was not a serious health condition triggering FMLA protection. Defs.' Summ. J. Br. at 15. Specifically, Defendants contend that Plaintiff cannot establish a qualifying serious health condition because Plaintiff (1) never provided the Sheriff's Office with "medical evidence indicating that she was medically unable to perform her employment duties as required under FMLA," (2) Plaintiff's physician's main concern in asking Plaintiff to be placed on light duty was Plaintiff's safety and not any actual physical inability, and (3) Plaintiff was merely pregnant and not suffering from any incapacity therewith. *Id.* at 12-14.

    In a suit alleging violation of the FMLA, a plaintiff must "prove the existence of an FMLA-qualifying condition."[18] *Stroder v. United Parcel Serv., Inc.*, 750 F. Supp. 2d 582, 589 (M.D.N.C. 2010); *see also Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1147 (8th Cir. 2001) ("Where absences are not attributable to a 'serious health condition,' . . . FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences."). Pertinent to this case, the FMLA defines "serious health condition" as an "illness, injury, impairment, or physical or mental condition" that involves "continuing treatment" by a health care provider.[19] 29 U.S.C. §

---

[18] Segments of an employee's leave may be FMLA-qualifying while other segments may not qualify due to a change in conditions or differing circumstances. *See Sharpe v. MCI Telemcomm. Corp.*, 19 F. Supp. 2d 483, 488-89 (E.D.N.C. 1998) (analyzing whether plaintiff's FMLA leave began on May 22, 1996 or later on July 10, 1996).

[19] There are no facts indicating that Plaintiff received inpatient care in a hospital or other medical care facility. *See* 29 U.S.C. § 2611(11)(B) (stating that a serious health condition may also arise when an employee receives inpatient care).

2611(11)(B). While the FMLA does not define the term "continuing treatment," the FMLA governing regulations clarify the definition of the term:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> . . . .
>
> (b) Pregnancy or prenatal care. Any period of incapacity due to pregnancy, or for prenatal care.

29 C.F.R. § 825.115.

Further, a period of incapacity includes the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."[20] 29 C.F.R. § 825.113(b). Section 825.120(a)(4) provides that a mother may take FMLA leave for incapacity due to pregnancy, for prenatal care, or for her own serious health condition even before the actual birth of a child. *See* 29 C.F.R. § 825.120(a)(4). A mother may be entitled to leave for incapacity due to pregnancy even if she does not receive treatment during the

---

[20] The regulations provide further that an employee "is unable to perform the functions of [her] position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions the employee's position." 29 C.F.R. § 825.123(a). *See Whitaker v. Bosch Braking Sys.*, 180 F. Supp. 2d 992, 933 (W.D. Mich. 2001) (holding that where working overtime was essential to employee's job and employee's physician barred her from working overtime, employee was unable to work, thereby entitling her to FMLA leave); *Treadaway v. Big Red Powersports, LLC*, 611 F. Supp. 2d 768, 776 (E.D. Tenn. 2009) (finding issue of fact as to plaintiff's incapacity under FMLA definition when plaintiff's OB/GYN physician concluded that plaintiff's exposure to carbon monoxide in the workplace would not be in plaintiff's best interest).

Case 5:11-cv-00693-FL   Document 32   Filed 09/13/13   Page 13 of 30

absence and even if she is not absent for more than three consecutive calendar days. *Id.*

Several courts have held that the mere fact that an employee is pregnant is not an FMLA-qualifying event; rather an employee must show some incapacity due to such pregnancy to qualify as a serious health condition. *See Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005); *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 952 (7th Cir. 2004); *Blackburn v. Potter*, No. IP01-1645-C-B/S, 2003 WL 1733549, at *6 (S.D. Ind. Mar. 31, 2003); *Dormeyer v. Comerica Bank*, No. 96-C-4805, 1997 WL 403697, at *3 (N.D. Ill. July 15, 1997); *Murphy v. Cadillac Rubber & Plastics*, 946 F. Supp. 1108, 1121 (W.D.N.Y. 1996) (holding that a miscarriage constitutes a serious health condition); *accord Treadaway*, 611 F. Supp. 2d at 776. The Fourth Circuit has noted that the inquiry of whether an illness or condition qualifies as a "serious health condition" focuses on the "effect of an illness on the employee and the extent of necessary treatment rather than the particular diagnosis." *Miller*, 250 F.3d at 835.

The eligible employee must also give the employer notice that she is requesting leave for a serious health condition that renders her unable to perform her position's duties. *Brenneman*, 366 F.3d at 421. When the time for needed leave is unforeseeable, the eligible employee should give the employer notice of the need for leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason,[21] the employer bears the burden

---

[21] Plaintiff verbally informed her supervisors of her pregnancy and attendant need for light duty work due to her pregnancy. Plaintiff submitted an FMLA Application listing her pregnancy and light duty work restrictions. Further, Plaintiff was directly instructed by the Sheriff's Office that she needed to apply for FMLA leave, and her work time was entered as being FMLA leave.

Therefore, since the Sheriff's Office triggered Plaintiff's leave based on the information Plaintiff provided about her pregnancy, the Sheriff's Office was clearly on notice that Plaintiff *may* qualify for FMLA benefits. *See* 29 C.F.R. § 825.303(b) (stating the notice shall include "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request").

14

to gather any additional information necessary for the leave to fall within the FMLA. *Brenneman*, 366 F.3d at 422. The regulations provide that the employer is permitted to seek additional information in order to ascertain whether the employee's absence actually qualifies for FMLA protection. 29 C.F.R. § 825.303(b). In doing so, an employer may require an employee to support his or her leave by submitting a certification, completed by a physician, in a timely manner. 29 C.F.R. § 825.305(a). Where the leave is due to a serious health condition of the employee, that prevents her from performing her job, the requested certification is sufficient if it states the date upon which the serious health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the health care provider's knowledge, and a statement that the employee is unable to perform her position's duties. 29 U.S.C. § 2613(b). Failure by the employee to provide a complete certification permits an employer to delay FMLA protections for the leave "until a sufficient certification is provided," and if a certification is never provided, "the leave is not FMLA leave." 29 C.F.R. § 825.313(b); *see* 29 C.F.R. § 825.303(b) (stating the "employee has an obligation to respond to employer's questions designed to determine whether an absence is potentially FMLA-qualifying").

Here, the applicable inquiry for the court is whether Plaintiff had a condition involving "continuing treatment" by a health care provider. This case defies the conventional pattern for FMLA claims as Plaintiff did not seek leave initially, but was instructed by the Sheriff's Office to seek FMLA leave because no light duty work was available to Plaintiff.[22] However, the court must yet consider whether Plaintiff suffered from a serious health condition irrespective of whether

_____

[22] So long as the employee is eligible for leave under the FMLA, it is immaterial whether it is the employee or employer that triggers the FMLA leave. *See Tate v. Farmland Ind., Inc.*, 268 F.3d 989, 998 (10th Cir. 2001).

15

Plaintiff or the Sheriff's Office triggered Plaintiff's leave. Taking the facts in the light favorable to Plaintiff, Plaintiff has presented evidence from which a reasonable jury could find that she suffered from a "serious health condition." First, Plaintiff has shown that her physician specifically advised her during her September 15, 2010 appointment that, due to safety concerns, she was only to perform light duty work which precluded Plaintiff from working inside the inmate pods where Plaintiff traditionally worked as a detention officer. Pl.'s Aff. ¶ 9 & Ex. B; Pl.'s 2d Dep. 9-10. Plaintiff's physician simultaneously gave Plaintiff a written note dated September 15, 2010 stating the following: "Please place [Plaintiff] on light duty or clerical work, related to pregnancy." Pl.'s Dep. 37:15-17; Dep. of Jean Kidd[23] ("Kidd Dep.") Ex. 14; Pl.'s Aff. Ex. B. *See* 29 C.F.R. § 825.123(a) (stating an employee is unable to work where a health care provider finds the employee unable to perform an essential function of the job); 29 C.F.R. § 825.113(b) (stating a period of incapacity includes the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom"). Additionally, Plaintiff testified numerous times during her deposition that directly supervising female inmates in the pods was an essential function of her job as a detention officer and that she was unable to continue performing that function due to her physician's restrictions. Pl.'s Dep. 49:16-25; Pl.'s 2d Dep. 7, 9. The fact that Plaintiff could perform some other job while pregnant is not relevant. *See Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 861 (8th Cir. 2000) (holding that an employee's incapacity is job-specific and not a generalized inability to work); *accord Treadaway*, 611 F. Supp. 2d at 776. Plaintiff also stated she was not able to perform her duties as a detention officer working in the inmate pods because she would not be able carry out her training to physically protect herself

---

[23] An excerpt from Kidd's deposition was filed by Plaintiff, in support of her brief, and can be found at Docket Entry Number 28-5.

16

in the pods. Pl.'s 2d Dep. 11-12.

Second, Plaintiff has also provided the court with evidence of routine pregnancy examinations, ultrasound appointments, and a surgical procedure stemming from her miscarriage which occurred after she stopped working in September 2010. Pl.'s Aff. Ex. B; Pl.'s Dep. 37:5-9, 56-58; Pl.'s 2d Dep. 13:8-16, 14:17-21. *Cf.* 29 C.F.R. § 825.120(a)(4) (recognizing a pregnant mother may be entitled to leave even without receiving treatment). Plaintiff states in her affidavit that she was seen or treated by health care professionals for "matters related to [her] pregnancy and miscarriage" on September 15, 2010, September 22, 2010, September 23, 2010, October 11, 2010, October 15, 2010, and November 1, 2010 – all occurring on or before the date of her termination. Pl.'s Aff. ¶ 8.

Last, Plaintiff has attached to her affidavit a Health Care Provider Certification, also introduced as Defendants' Exhibit 1 in Plaintiff's November 7, 2012 deposition, which describes Plaintiff as having suffered a miscarriage commencing on September 22, 2010 which rendered Plaintiff unable to perform her job functions. Pl.'s Aff. Ex. B. The court notes there is significant dispute between the parties as to whether Plaintiff adequately informed the Sheriff's Office of her medical condition. Specifically, the parties dispute whether the Health Care Provider Certification was provided by Plaintiff to the Sheriff's Office or Human Resources. Pl.'s Dep. 52:16-21, 55:11-16; Bethune Dep. 32:2-8. The Health Care Provider Certification contains evidence documenting Plaintiff's medical condition and the impact of her pregnancy and related conditions on her ability to perform her job duties as a detention officer. Plaintiff has sufficiently demonstrated an issue of fact as to whether Defendant received the Health Care Provider Certification, which is material because a reasonable jury could find from this form that Plaintiff satisfied the definition of a serious

17

health condition triggering leave. A reasonable jury could find from this evidence that Plaintiff was incapacitated for at least three consecutive days and treated at least two times within 30 days from the start of incapacity, 29 C.F.R. § 825.115(a), or underwent a period of incapacity due to her pregnancy, 29 C.F.R. § 825.115(b), satisfying at least one definition of "continuing treatment." Accordingly, the court recommends Defendants' motion for summary judgment on Plaintiff's FMLA claims be denied on this basis. Since Plaintiff has established a genuine issue of material fact as to the presence of her own serious health condition, the court now addresses whether Defendants are otherwise entitled to summary judgment on Plaintiff's FMLA claims.

## ii. *Plaintiff's Interference Claim*

Plaintiff asserts that Defendant Rollins interfered with her FMLA rights by terminating her employment while she was on FMLA leave. Compl. ¶ 51. In order to assert an FMLA interference claim, a plaintiff need only demonstrate that she was entitled to a benefit that was denied. *See Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006); 29 U.S.C. § 2615(a) (stating the focus of an interference claim is whether an employee was denied a substantive FMLA benefit to which she was entitled). While an employee has a right to reinstatement upon returning from FMLA leave, the FMLA does not require an employee be restored to her prior job if she would have been lawfully discharged without taking FMLA leave. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006) (noting the right to restoration is not absolute); *see also Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). An employer does not interfere with an employee's FMLA right by terminating the

18

employee's employment if the employer would not have retained the employee had the employee not been on FMLA leave. *See Mercer v. Arc of Prince George's Cnty., Inc.*, No. 13-1300, 2013 WL 3470489, at *4 (4th Cir. July 11, 2013) (upholding grant of summary judgment to defendant where defendant terminated plaintiff's employment while on FMLA leave, but was able to show plaintiff was terminated for deficient performance); *Yashenko*, 446 F.3d at 547; *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005). "Thus, it appears that the Court should focus its attention on evidence either supporting or refuting a claim that the employer would not have retained the employee, at that position . . . even if the employee had not been on FMLA leave. In other words, although motive for the employment decision is largely irrelevant, the evidence must show that the employer did not make the employment decision because the employee took FMLA leave." *Santorocco v. Chesapeake Holding Co., LLC*, No. AW-08-3049, 2010 WL 2464972, at *5 (D. Md. June 10, 2010) (citations omitted).

Here, the primary issue for purposes of Plaintiff's interference claim is whether Defendant Rollins denied Plaintiff a FMLA benefit she was entitled to which, under these facts, essentially asks whether Plaintiff would have still been terminated despite any protected FMLA leave. Defendant Rollins stated that Plaintiff was terminated due to her cumulative indiscretions over the past months of her employment in 2010, including inappropriate text messages sent to other employees and a bad check to Plaintiff's previous landlord to which a warrant was expected to issue. Rollins Dep. 16:1-12, 20-21; Holt Aff. ¶¶ 11, 14. Defendant Rollins stated that Plaintiff's text communications in April 2010 alone could constitute sufficient grounds for termination, but that she was retained at that time due to a shortage in female detention officers. Rollins Dep. 16:2-12. Defendant Rollins was subsequently made aware of a bad check issued by Plaintiff and that her former landlord was going

19

to seek Plaintiff's arrest for issuing a bad check. Rollins Dep. 20:15-20, 29:13-16. According to Defendants, this reason provided by Defendant Rollins indicates that he would have terminated Plaintiff for reasons unrelated to any FMLA leave she may have taken, thereby precluding Plaintiff's interference claim that she was denied benefits to which she was entitled. *See Throneberry*, 403 F.3d at 974 (holding that employers are not strictly liable for interfering with employees' FMLA rights when an employer can show it would have made the same decision had the employee not exercised her FMLA rights).

However, Plaintiff offers several arguments, supported by evidence in the record, to refute Defendant Rollins' proffered reason and allow a jury to conclude otherwise. Specifically, Plaintiff points to the timing of her termination in relation to her alleged FMLA leave, the lack of explanation given for her termination, and the inaccurate county filing stating that Plaintiff resigned.[24] The court notes that temporal proximity standing alone is not enough to refute an employer's explanation, *see Mercer*, 2013 WL 3470489, at *4, however, coupled with the other evidence in the record cited by Plaintiff, there is sufficient evidence to create a triable issue of fact as to whether Plaintiff would have been entitled to restoration. Plaintiff cites to evidence in the record indicating inconsistent explanations as to her termination or a complete lack of explanation. Defendant Rollins provided no explanation to Plaintiff at the time of her termination and subsequently filed a document misstating Plaintiff as having resigned from her position as detention officer. Furthermore,

---

[24] Plaintiff's additional reasons connecting the termination of her employment and her FMLA leave are only Plaintiff's speculation. Pl.'s Resp. at 22-26. *See Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (recognizing a nonmoving party cannot create a genuine issue of material fact through "mere speculation or the building of one inference upon another"). Moreover, the other employees cited by Plaintiff in support of her argument of inconsistent discipline are not sufficiently analogous. Pl.'s Resp. at 23. *See Reed v. Maryland*, No. ELH-12-0472, 2013 WL 489985, at *17 (D. Md. Feb. 7, 2013) (noting that comparator evidence must be substantially similar to be meaningful evidence).

20

Plaintiff's termination letter provides no explanation for her termination and Plaintiff was not given a verbal explanation for her termination. Grady Dep. Ex. 18; Pl.'s Dep. 59-61. No reason was given even though Defendant Rollins' stated reason for termination, that Plaintiff had cumulative indiscretions warranting termination, was known to him at the time of Plaintiff's termination. Additionally, the revocation of appointment signed by Defendant Rollins and filed with the Harnett County Clerk of Court stated that revocation was the result of Plaintiff's resignation. Grady Dep. Ex. 18. Plaintiff's arguments as to Defendant's vague and inconsistent explanations are supported in the record and, as such, there is sufficient evidence to preclude summary judgment for Defendants on this claim. Accordingly, the court recommends Defendants' motion for summary judgment on Plaintiff's FMLA interference claim be denied.

### iii. *Plaintiff's Retaliation Claim*

Plaintiff also asserts that Defendant Rollins retaliated against her for exercising her rights under the FMLA by terminating her employment. *See* Compl. ¶¶ 63-64. For a retaliation claim, a plaintiff bears the burden of making a prima facie showing that she (1) engaged in protected activity (taking FMLA leave); (2) that her employer took adverse action against her; and (3) that the adverse action was causally connected to her protected activity. *Yashenko*, 446 F.3d at 550-51. A close temporal proximity between the employee's leave and the termination is sufficient to satisfy the prima facie case element of causation. *Id.* at 551 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). If a plaintiff makes her prima facie showing, then the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the alleged adverse employment action. *Id.* (recognizing that a retaliation claim under the FMLA is analogous to claims brought under Title VII and are therefore analyzed under the *McDonnell Douglas* burden shifting

framework). When an employer provides a nondiscriminatory motive for termination, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). If a defendant articulates such a reason, the burden then shifts back to the plaintiff to establish, by a preponderance of the evidence, that the employer's non-discriminatory explanation is a pretext for unlawful retaliation under the FMLA. *Id.*; *see Dennis v. Columbus Colleton Med. Ctr.*, 290 F.3d 639, 636 (4th Cir. 2002) ("Under the *McDonnell Douglas* framework, once an employer has met its burden of producing a legitimate nondiscriminatory explanation for its decision, the plaintiff is afforded the 'opportunity to provide by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'") (quoting *Texas Dep't of Cnty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

A plaintiff cannot prove pretext, however, merely by disagreeing with the evaluations given by her supervisor. *Hawkins*, 203 F.3d at 280. An employee may demonstrate pretext by showing contradictions, inconsistencies, and post-hoc rationalizations on the part of the employer. *See Dennis*, 290 F.3d at 646-47; *Hurlbert*, 439 F.3d at 1298. Also, comparator evidence, that is, "evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably," is useful to the determination of whether an employer's explanation is pretextual. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). When using comparator evidence, there must be substantial similarity so that a meaningful comparison can be drawn. *See Reed*, 2013 WL 489985, at *17.

As to Plaintiff's prima facie case, the court finds an issue of fact regarding whether Plaintiff

22

engaged in a protected activity under the first element based the court's previous discussion as to the presence of a serious health condition. As to the other elements, Plaintiff was terminated from her employment which clearly constitutes adverse action by Defendant Rollins and her termination was in close proximity to her leave satisfying the causation element. Assuming a serious health condition, Plaintiff has made a prima facie showing of retaliation. The parties do not dispute that Defendant Rollins has provided a non-discriminatory reason for Plaintiff's termination based on Plaintiff's cumulative misconduct. Rather, the parties dispute whether Plaintiff has established that Defendants' non-discriminatory explanation is a pretext for unlawful retaliation under the FMLA.

The court finds that Plaintiff has shown a genuine issue of material fact exists as to the legitimacy of Defendant Rollins' stated reason for Plaintiff's termination.[25] First, as was noted in the discussion of Plaintiff's prima facie case, Plaintiff was terminated while on leave demonstrating a close temporal proximity. *See O'Neill v. Henderson Cnty. Hosp. Corp.*, No. 1:04-CV-68, 2005 WL 3797394, at *4 (W.D.N.C. June 21, 2005) (recognizing that the temporal proximity of the protected activity and the adverse employment action can also be evidence of pretext). Also, as discussed earlier, Plaintiff has shown inconsistent explanations on the part of Defendant Rollins. The termination letter Plaintiff received did not state a reason for Plaintiff's termination, only that her services were no longer needed. Grady Dep. Ex. 18. Further, Plaintiff states she was not verbally given a reason for her termination by Grady or anyone else at the Sheriff's Office and was not given an opportunity to speak with Defendant Rollins regarding her termination, although the reason for her termination was available at the time of termination. Pl.'s Dep. 59-61. Defendant

---

[25] The court notes that the evidence discussed relating to Plaintiff's interference claim also supports Plaintiff's argument for pretext given the underlying facts of each claim. *See Mercer*, 2013 WL 3470489, at *6-7 (discussing similar evidence for plaintiff's FMLA claims of interference and retaliation).

23

Rollins has since stated, during discovery in this case, that Plaintiff was terminated for repeated indiscretions during her employment even though this reason was not provided to Plaintiff at the time of her termination. Rollins Dep. 16, 20, 29; Pl.'s Resp. [DE-27] Ex. 12; Grady Dep. Ex. 18. *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) (recognizing that explanations "developed over time to counter evidence suggesting discrimination" can be probative of pretext); *cf. Mercer*, 2013 WL 3470489, at *6 (finding plaintiff could not demonstrate pretext through "shifting justifications" because the reason provided by the employer from "her termination of employment letter through litigation has been consistent"). Further, the revocation of appointment regarding Plaintiff's employment status, which was signed by Defendant Rollins and filed with the Harnett County Clerk of Court, indicated that Plaintiff resigned from her position as a detention officer which conflicts with the evidence of record. Grady Dep. Ex. 18. Defendant Rollins stated in his deposition that the designation in the revocation of appointment that Plaintiff had resigned as a detention officer was an typographical error that was not caught in review. Rollins Dep. 60:12-14.

The factual issues raised in this case pertaining to the allegedly pretextual nature of Defendant Rollins' stated reason for terminating Plaintiff's employment preclude summary judgment. Accordingly, the court recommends Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim be denied.

## B. State claims

In addition to her claims under the FMLA, Plaintiff has also asserted a North Carolina common law claim of negligent infliction of emotional distress and a North Carolina statutory claim for recovery on Defendant Rollins' surety bond pursuant to N.C. Gen. Stat. § 58-76-5.

      *i.    Negligent Infliction of Emotional Distress ("NIED")*

24

Plaintiff alleges negligent infliction of emotional distress under North Carolina common law against Defendant Rollins based on his termination of Plaintiff's employment. Compl. ¶ 72. Defendants assert that Plaintiff has failed to demonstrate that Defendant Rollins was negligent, that Plaintiff was experiencing severe emotional distress, or that such distress was reasonably foreseeable from Plaintiff's termination. Defs.' Summ. J. Br. at 18-19.

To assert a viable NIED claim, a plaintiff must show "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). North Carolina courts have interpreted the term "severe emotional distress" to mean "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (quoting *Johnson*, 327 N.C. at 304, 395 S.E.2d at 92). Although evidence in the form of medical testimony is not necessarily required to establish severe emotional distress, *Coffman v. Roberson*, 153 N.C. App. 618, 627, 571 S.E.2d 255, 261 (2002), in order to forecast sufficient evidence of severe emotional distress, a plaintiff needs to produce medical documentation evidencing the severe emotional distress claimed or some other evidence establishing the same. *See Waddle*, 331 N.C. at 85, 414 S.E.2d at 28 (concluding that without medical documentation or other evidence of plaintiff's alleged "severe emotional distress," plaintiff could not survive summary judgment on her NIED claim). Additionally, the Fourth Circuit and this court have held that an employer's conduct regarding an employee, including the termination of employment, is inherently

25

intentional conduct that cannot support a claim for negligent infliction of emotional distress. *Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994); *E.E.O.C. v. Safelite Glass Corp.*, No. 4:12-CV-102-F, 2012 WL 3266333, at *17 (E.D.N.C. Aug. 9, 2012); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008) (holding defendant's conduct in allegedly discriminating against plaintiff was intentional conduct that could not support a NIED claim); *see Eckhardt v. Bank of Am., N.A.*, No. 3:06-CV-512, 2008 WL 5100843, at *17-18 (W.D.N.C. Nov. 26, 2008); *Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) (same).

Here, Plaintiff has failed to show negligent conduct on the part of Defendant Rollins. Indeed, Plaintiff has alleged Defendant Rollins unlawfully terminated her employment in response to her taking FMLA leave, an intentional act. Further, Plaintiff has failed to offer any evidence, other than her own statements, that she suffered severe emotional distress. Plaintiff has described briefly that she was "going through a lot financially, emotionally" and was pregnant again in 2011 while still looking for employment and being evicted. Pl.'s Dep. 79-81. Plaintiff suffered a second miscarriage in April 2011 which she alleges was caused by the stress of losing her job as a detention officer. Pl.'s Dep. 79:6-14, 167:4-16. Plaintiff also talks about her depression arising in 2010 and hair loss and anxiety issues in 2011. Pl.'s Dep. 80:21-24, 154:4-24, 164:10-15, 165:1-14; Pl.'s 2d Dep. 15:14-18, 16-18. Plaintiff admitted that she has not seen a psychiatrist or psychologist since she was terminated in November 2010. Pl.'s Dep. 244:18-22. Plaintiff has described a distressful condition, at least in the sense that "any termination will cause [a] discharged employee some degree of emotional upset." *Bratcher*, 545 F. Supp. 2d at 546 (quoting *Barber v. The Family Ctr.*, No. 3:04-CV-258-W, 2006 WL 3246608, at *2 (W.D.N.C. Nov. 6, 2006)). However, Plaintiff has failed to

26

provide the necessary medical evidence to support a showing of emotional distress that is sufficiently severe and disabling. Accordingly, the court recommends that Defendants' motion for summary judgment be granted as to Plaintiff's NIED claim and Plaintiff's NIED claim be dismissed.

### ii. *Surety bond claim*

Plaintiff has named Cincinnati Insurance Company ("Cincinnati") as a party Defendant in this suit and has alleged a direct claim against Defendant Rollins' official bond under N.C. Gen. Stat. § 58-76-5.[26] In particular, Plaintiff alleges that Defendant Cincinnati, as surety through Defendant Rollins' bond, is liable to Plaintiff for her injuries caused by Defendant Rollins' "neglect in office." Compl. ¶ 81. Defendants move for summary judgment on Plaintiff's bond claim on the grounds that Plaintiff cannot establish the essential elements of her claim, primarily that Defendant Rollins was negligent in the execution of his duties. Defs.' Summ. J. Br. at 19-20; Defs.' Summ. J. Reply [DE-30] at 8. Plaintiff contends that she has demonstrated every element of a bond claim through Defendant Rollins negligence. Pl.'s Resp. [DE-27] at 28.

"Sovereign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits." *Phillips v. Gray*, 163 N.C. App. 52, 55, 592 S.E.2d 229, 232 (2004). However, North Carolina law allows two ways for a Sheriff, who is considered a public official for sovereign immunity purposes, to be sued in his official capacity. *See Smith v. Phillips*, 117 N.C. App. 378, 383, 451 S.E.2d 309, 313 (1994). One of those two ways is pursuant to N.C. Gen. Stat. § 58-76-5 which allows "a plaintiff [to] maintain a suit against a sheriff or other officer and the surety on their official bond for acts of negligence in

---

[26] Defendants admit in their answer that "Sheriff Rollins furnished a bond secured by a surety pursuant to N.C. Gen. Stat. § 162-8." Answer ¶ 8.

the performance of their official duties."[27] *Id.*; *see Slade v. Vernon*, 110 N.C. App. 422, 427-28, 429 S.E.2d 744, 747 (1993) ("By expressly providing for this cause of action, the General Assembly has abrogated common law immunity where a public official causes injury through 'neglect, misconduct, or misbehavior' in the performance of his official duties or under color of his office.").

When asserting a claim under N.C. Gen. Stat. § 58-76-5, a plaintiff is "required to prove every element of a claim brought under N.C. [Gen. Stat.] 58-76-5" just as she would be required to prove all elements for a common law tort claim. *Stafford v. Barker*, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998) (affirming grant of summary judgment where there was no common law claim to support plaintiff's statutory bond claim). It therefore follows that the dismissal of all state law claims necessitates the dismissal of a statutory bond claim. *Anderson v. Caldwell Cnty. Sheriff's Office*, No. 1:09-CV-423, 2013 U.S. Dist. LEXIS 82610, at *2 n.1 (W.D.N.C. June 12, 2013) ("The Court notes that the dismissal of the state law claims would necessarily result in the dismissal of this statutory [bond] claim."); *see also Jones v. Houston*, No. 4:08-CV-121-F, 2010 WL 3835147, at *15 n.5 (E.D.N.C. Sept. 28, 2010) (allowing a plaintiff to file an amended complaint with the addition of a bond claim because there was sufficient evidence of plaintiff's negligent supervision claim to support a statutory bond claim); *Russ v. Causey*, 732 F. Supp. 2d 589, 610 n.12 (E.D.N.C. 2010) (declining to grant summary judgment for defendants on plaintiffs' bond claim because plaintiffs had sufficiently proven their common law tort claims which could support the bond claim); *Johnson v.*

---

[27] N.C. Gen. Stat. § 58-76-5 provides:

Every person injured by the neglect, misconduct, or misbehavior of any ... sheriff ... may institute suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State ... and every such officer and the sureties on his official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of his office.

*Causey*, No. COA09-1712, 2010 WL 4288511, at \*6-9 (N.C. App. Nov. 2, 2010) (explaining that because plaintiff failed to show genuine issues of material fact existed as to the common law claims asserted against the sheriff, a claim under the sheriff's bond could not survive).

As this court has previously explained, Plaintiff has failed to produce sufficient evidence to support her sole common law tort claim – negligent infliction of emotional distress. Accordingly, the court recommends that Defendants' motion for summary judgment be granted as to Plaintiff's bond claim and that Plaintiff's bond claim be dismissed.

## V. CONCLUSION

For the reasons stated above, this court RECOMMENDS that Defendants' motion for summary judgment be DENIED IN PART and GRANTED IN PART. Specifically, the court recommends that:

(1) Defendants' Motion for Summary Judgment be DENIED as to Plaintiff's FMLA interference claim;

(2) Defendants' Motion for Summary Judgment be DENIED as to Plaintiff's FMLA retaliation claim;

(3) Defendants' Motion for Summary Judgment be GRANTED as to Plaintiff's NIED claim and that Plaintiff's NIED claim be dismissed; and

(4) Defendants' Motion for Summary Judgment be GRANTED as to Plaintiff's bond claim and that Plaintiff's bond claim be dismissed.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to,

29

and accepted by, the District Court.

This, the 13 day of September, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge

Case 5:11-cv-00693-FL   Document 32   Filed 09/13/13   Page 30 of 30